UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>MICHAEL SCOTT CARLSON,<br>Defendant. | CR. 19-50047-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Michael Scott Carlson, appearing *pro se*, filed a motion for compassionate release. (Docket 59). Pursuant to the October 21, 2020, Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Carlson's motion. (Dockets 64, 67, 70, 72-74, 77-79). For the reasons stated below, defendant's motion is denied.

**AMENDED STANDING ORDER 20-06**

Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(l)(A), in the wake of the spread of

[1] See https://www.sdd.uscourts.gov/socraa.

the COVID-19 virus into the federal prison system." (ASO 20-06 at p. 1). By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

> a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .
>
> b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.
>
> c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.
>
> d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

**MR. CARLSON'S CLASSIFICATION**

On December 21, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Carlson as an Intermediate Priority case. (Docket 60).

**FACTUAL BACKGROUND**

Mr. Carlson pled guilty to attempted enticement of a minor using the internet in violation of 18 U.S.C. §§ 2422(b) & 2427. (Dockets 33 & 37). On April 23, 2020, Mr. Carlson was sentenced to a term of imprisonment of 120

months followed by five years of supervised release. (Dockets 56 & 58 at pp. 2-3). An amended presentence investigation report ordered by the court calculated Mr. Carlson's advisory guideline range as 70 to 87 months of imprisonment based on a total offense level of 25 and his criminal history category III. (Docket 57 ¶ 67). The offense, however, carried a mandatory minimum sentence of ten years. Id. ¶ 66. The court sentenced Mr. Carlson to the statutorily mandated minimum sentence. (Docket 58 at pp. 2-3).

Mr. Carlson is currently an inmate at FCI Pekin, a medium security facility with an adjacent minimum security camp, in Pekin, Illinois. Fed. Bureau Prisons, https://www. bop.gov/inmateloc/ (last checked April 26, 2021). The total inmate population at FCI Pekin is currently 1,166 persons. https://www.bop.gov.locations/institutions/pek/ (last checked April 26, 2021). As of April 26, 2021, there were no active COVID-19 cases among inmates at FCI Pekin. https://www.bop.gov/coronavirus/ (last checked April 26, 2021). FCI Pekin reported no inmate deaths as a result of COVID-19, and 754 inmates and 78 staff have recovered from COVID-19. Id.

Mr. Carlson is scheduled for release on October 1, 2027. (Docket 64 at p. 1). As of December 23, 2020, Mr. Carlson served approximately 20.5 percent of his statutory sentence and his elderly offender two-thirds release date is November 23, 2025. Id. at p. 2. He is 59 years old. Id. at p. 1.

**MR. CARLSON'S MOTION**

Mr. Carlson's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his underlying medical conditions and the threat continued incarceration poses to his health during the COVID-19 pandemic. (Docket 59 at pp. 1-2). Mr. Carlson claims several of his medical conditions have become worse since he contracted COVID-19 while being incarcerated. Id.

On March 10, 2021, counsel for Mr. Carlson filed a supplement to his *pro se* motion. (Docket 77). Mr. Carlson, through counsel, argues extraordinary and compelling reasons warrant his compassionate release, including (1) his Parkinson's disease has worsened while incarcerated; (2) he contracted COVID-19 in July 2020; (3) since that time, he has been diagnosed with chronic obstructive pulmonary disease (COPD); (4) he has diabetes; (5) he was diagnosed with post-traumatic stress disorder while in pretrial custody; and (6) he suffers from a number of other underlying health conditions. Id. at p. 1. Mr. Carlson contends these circumstances in combination with his age and the conditions of confinement in a crowded facility during the COVID-19 pandemic are "extraordinary and compelling reasons" for a reduced sentence. Id. at pp. 7, 11-19.

Mr. Carlson argues a sentence of time served is consistent with the sentencing factors of 18 U.S.C. § 3553(a). Id. at pp. 21-22. Mr. Carlson, through counsel, contends his offense was an inchoate crime involving a

fictitious victim portrayed by an undercover law enforcement officer. Id. at p. 21. Mr. Carlson's sentencing guideline range was 70-87 months, but he was sentenced to the mandatory minimum ten-year sentence which prohibited the court from considering a lesser sentence. Id. at p. 22. Mr. Carlson, through counsel, also contends he "does not today present a danger to the community in consideration of his age and health conditions." Id.

The court conducted a detailed review of Mr. Carlson's medical records in this case. Mr. Carlson's medical records confirm the following noteworthy medical conditions:

- Anxiety disorder, unspecified. (Docket 72 at p. 1);
- Arthritis. Id.;
- COPD (mild). Id.;
- Coronary artery disease. Id.;
- COVID-19 virus detected. Id.;
- Diabetes. Id.;
- Diabetic neuropathy. Id.;
- Gastroesophageal reflux disease. Id.;
- History of tobacco use disorder. Id.;
- Hypertension. Id.;
- Osteoarthritis of shoulder. Id.;
- Parkinson's disease, secondary. Id.; and
- Post-COVID syndrome. Id.

Mr. Carlson's medication regimen for his conditions currently includes acetaminophen, albuterol sulfate inhaler, atorvastatin, carbidopa-levodopa, cetirizine, colace, duloxetine, hydroxyzine, glucose, lisinopril, metformin, Novolin, omeprazole, semglee injections, tudorza pressair inhaler, and several other vitamins and supplements Id. at pp. 9-10.

The records show Mr. Carlson has gained weight while incarcerated. Mr. Carlson is 5' 9" tall. (Docket 57 ¶51). At the time of his presentence interview he reportedly weighed 180 pounds. Id. On May 18, 2020, he weighed 195 pounds resulting in a calculated Body Mass Index ("BMI") of 28.8. (Docket 70, at p. 63). On October 22, 2020, he weighed 216 pounds. (Docket 72 at pp. 14-15). Based on his height and most recent weight, Mr. Carlson has a BMI of 31.9, which puts him in the obese category. See Adult BMI Calculator, Ctr. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last checked April 26, 2021).

**UNITED STATES' OPPOSITION**

The government opposes Mr. Carlson's motion for compassionate release. (Docket 78). First, the government argues Mr. Carlson's motion should be denied because he already contracted COVID-19 and there is no need to release him now since cases of reinfection are rare. Id. at pp. 7-8. Second, though agreeing Mr. Carlson has many serious medical conditions, the

government contends those conditions do not support he is unable to provide self-care in the correctional facility setting. Id. at pp. 9-11. The government points out Mr. Carlson has often refused to make the recommended lifestyle changes to improve his health and refused to take some of his medications. Id. at p. 11. Next, the government argues the 3553(a) factors do not support Mr. Carlson's motion for compassionate release. Id. at pp. 13-17. The government argues Mr. Carlson committed a serious crime and has served only a fraction of his mandatory minimum sentence in custody. Id. at pp. 16-17. (Docket 120 at p. 5).

Finally, the government argues if Mr. Carlson's motion is granted, the court should impose a condition of home confinement for the duration of his current sentence of imprisonment. Id. at p. 18.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute. 18 U.S.C. § 3582(c)(1)(A)(i). The government does not contend Mr. Carlson's motion should be rejected for failure to exhaust administrative remedies. See Docket 78 at p. 6. Accordingly, the court will address the motion on its merits.

**Extraordinary and Compelling Reasons**

When extraordinary and compelling reasons exist, section 3582(c) permits the district court to reduce a defendant's term of imprisonment "after considering the factors set forth in section 3553(a) to the extent they are applicable" and when the reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission lacks a quorum and has not updated the policy statements for "extraordinary and compelling reasons" justifying compassionate release since the passage of the First Step Act in December 2018. United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

The court previously surveyed the status of the law as to a court's authority under the First Step Act. E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020). A summary of that survey is sufficient here.

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

This court held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."[2] E.g., Magnuson, 2020 WL 7318109, at *5 (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

Turning to that task, the court concludes Mr. Carlson's conditions, though serious, do not demonstrate extraordinary and compelling reasons for compassionate release at this time.

---

[2]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so. United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. March 15, 2021; United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020); and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

The Centers for Disease Control and Prevention ("CDC") recognizes that the risk of severe illness as a result of COVID-19 increases with age, with older adults at higher risk. See Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated Apr. 16, 2021) (last checked Apr. 26, 2021). The CDC reports eight out of ten COVID-19 deaths are in people 65 years old and older. Id. The CDC identifies people age 50-64 as being 25 times more likely to require hospitalization as compared to those age 5-17 years old, though the greatest risk is to those 85 and older. Id. Mr. Carlson's age is one of the factors the court considers in evaluating his motion for compassionate release.

Adults of any age are at increased risk of severe illness from COVID-19 if they have certain conditions. Recently, the CDC updated its understanding of the health conditions increasing the risk from COVID-19. See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021) (last checked Apr. 26, 2021). The CDC now states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease at any stage, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease (COPD), cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection,

immunocompromised state, liver disease, overweight and obesity, being a current or former smoker, history of stroke or cerebrovascular disease, substance abuse disorders and several others. Id.

Mr. Carlson has many of these conditions, including COPD, diabetes, coronary artery disease, hypertension, being overweight/obese and is a former smoker. (Docket 72 at p. 1). The CDC guidance to clinicians explains "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in an individual." https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last checked April 26, 2021). Mr. Carlson has other notable underlying conditions as well that contribute to his poor overall health including diabetic neuropathy, GERD, hyperlipidemia, secondary Parkinson's disease and arthritis.

Despite Mr. Carlson's many health conditions, the court recognizes the many protections the BOP has implemented during the COVID-19 pandemic to protect inmates from the transmission of the virus within the facilities and to care for those inmates who contract the condition. See https://www.bop.gov/coronavirus/covid19_status.jsp (last checked Apr. 26, 2021). FCI Pekin has reported 754 inmates recovered from COVID-19 to date, including Mr. Carlson. https://www/bop.gov/coronavirus/ (last checked Apr. 26, 2021). There are currently no active cases among inmates and none has died. Id.

Mr. Carlson argues he is at risk for reinfection. According to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."

https://www.cdc.gov/ coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020) (last visited Apr. 26, 2021). Furthermore, there is a growing consensus that "people who have had evidence of a prior infection with SARS-CoV-2, the virus that causes COVID-19, appear to have some degree of protection against being reinfected with the virus." See Nat'l Cancer Inst., NCI study finds that people with SARS-CoV-2 Antibodies may have a low risk of future infection, https://www.cancer.gov/news-events/press-releases/2021/sars-cov-2-antibodies-protect-from-reinfection (dated Feb. 24, 2021) (last visited Apr. 26, 2021). A retrospective cohort study of reinfection rates among persons who previously had COVID-19 was recently published by the Oxford University Press for the Infection Diseases Society of America. See Oxford Univ. Press, Reinfection Rates among Patients who Previously Tested Positive for COVID-19: a Retrospective Cohort Study, https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciab234/6170939 (last visited Apr. 26, 2021).

The court also recognizes the BOP's continued efforts to protect inmates in from COVID-19 by the implementation of a vaccination program for inmates and staff. See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Apr. 26, 2021). As of April 26, 2021, 145,491 doses have been administered systemwide. Id. At FCI Pekin, 122 staff and 355 inmates were fully inoculated as of April 26, 2021. See Learn More About Vaccinations and View Individual Facility Stats, https://www.bop.gov/coronavirus/ (last

checked Apr. 26, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

The BOP's measures to protect inmates, combined with Mr. Carlson's prior history of COVID-19 weigh against granting him early release based on extraordinary and compelling circumstances. The court finds Mr. Carlson has not met his burden of proof and does not present extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

**3553(a) Factors**

Even if the court were to consider Mr. Carlson's circumstances as "extraordinary and compelling reasons," the court concludes the § 3553(a) factors do not support relief. See 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others. Id. § 3553(a)(1)-(7).

In Mr. Carlson's case, the nature and circumstances of the offense—attempted enticement of a minor using the internet—is extremely serious, and

would have been harmful and devastating to the intended victim if Mr. Carlson's plan had come to fruition. Id. § 3553(a)(1). The court does not minimize Mr. Carlson's conduct regardless that an actual minor was not involved.

The court is cognizant of the government's concern that Mr. Carlson has not served a significant portion of his sentence and that his early release does not reflect the seriousness of or provide just punishment for the offense. These concerns are well taken. The court sentenced Mr. Carlson to 120 months imprisonment, and he has served approximately 24 months of that term. See Docket 64 at p. 2. On careful balance of the § 3553(a) factors, the court finds compassionate release is not appropriate.

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 59) is denied.

Dated May 6, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE